Wanamaker, J.
Section 13393, General Code, reads:
“Whoever gives a public dance, roller skating or like entertainment in a building, hall, room or rink in a city or village without having previously obtained a permit from the mayor thereof, or permits another so to do, or, being the owner or. lessor of a building containing a dance hall, room or rink fails to post in a conspicuous place therein a copy of this section, shall be fined not less than fifteen dollars nor more than one hundred dollars or imprisoned not more than sixty days, or both. ’ ’
Two questions are raised by counsel for plaintiff in error:
1. Is the statute constitutional?
2. If so, does not the record disclose that the mayor under such statute exercised purely arbitrary autocratic power in refusing at the time to permit any and all public dances, to such a degree as to amount to an abuse of his discretion under such statute ?
It should be observed that the statute in a general way outlaws “a public dance.” It is conceded in *369 this case that the defendant gave a public dance, charging admission thereto, and that as many of the public as could pay the admission were eligible to attend such dance.
The statute in question is old Section 694-5-a, Revised Statutes, passed in 1906 and found in 98 Ohio Laws, 61. It is classified under offenses against public policy. The legislature declared public policy to be against public dances in cities and villages, unless the one giving such dance should secure a permit from the mayor, who, in the preservation of the public peace and good order, is the people’s representative in affairs of government. In short it was left to the judgment and discretion of the mayor, having regard to the local conditions in the city or village, to determine whether or not public dances might be allowed notwithstanding the statute.
Prior to 1912, under various supreme court adjudications, cities and villages derived all their governmental powers from the general assembly, and the act here under consideration clearly vested in the mayor full power and authority to issue a permit, which likewise involves the power and authority to refuse to issue the permit.
What principle of the constitution, state or federal, is violated by a denial of such permit it is difficult to comprehend. It is not sought to restrain the use of property as to all dancing, but only as to public dances, where all classes of people, regardless of morals, health, peace, or safety, are permitted to assemble, hodge podge, and associate together.
The legislature wisely determined that this is a proper matter for the head of the local government. *370 the mayor, to determine. He is the proper representative of the people, chosen by the people, responsible to the people, and is no doubt representative of the people so far as the public morals, peace, safety, and welfare are concerned — at least so far as they may be affected by public dancing.
By virtue of the adoption by the people at the polls of the Constitution of 1912, particularly Article XVIII thereof, municipalities were given by Section 3 “all powers of local self-government,” and by the schedule of the constitution it was provided that all statutes then in force, not inconsistent with any of the amendments to the constitution, should remain in force. No suggestion was in any wise made that this statute is in any wise inconsistent with the exercise of “all powers of local self-government” granted to the people of the municipalities by this section of the constitution.
The evident purpose of Article XVIII was to make the grant of all powers of local self-government direct from the people of the state to the people of the municipalities, once and for all, without it being pieeemealed through the legislature. So the grant of power by the statute has been confirmed by the grant of power through the constitution, and we find no suggestion of unconstitutionality whatsoever in the statute.
As to the claim of arbitrary discrimination upon the part of the mayor we find that it is not sustained by the record. The mayor did not issue permits to some and refuse them to others. The mayor did not arbitrarily say that Rowland was an unfit or unsuitable person, or that the place was unfit or *371 unsuitable for a public dance, but held under the statute that no public dance should be given at the time and place in question.
We are not advised by the record as to what the controlling reasons were for the mayor’s refusal to issue permits at that time or at that place for any public dance, and the statute does not require him to give any reasons either for issuing a permit or refusing to issue a permit. We are clear that the mayor acted within his rights and powers under the statutes, and even if there were any doubt about it that doubt should be resolved in favor of the constitutionality of the statute and the proper exercise of the power vested in the mayor thereunder.
The judgment of the court of common pleas and the court of appeals is therefore affirmed.

Judgment affirmed.

Marshall, C. J., Johnson and Matthias, JJ., concur.